UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD ROBINSON,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY & COUNTY OF SAN FRANCISCO, et al.,<br><br>    Defendants. | Case No.  13-cv-05832-JSC<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 47 |

Plaintiff Harold Robinson alleges that Defendants the City and County of San Francisco, Edward D. Reiskin, the Executive Director of the San Francisco Municipal Transportation Agency ("MTA"), and Cheryl Turner, a Superintendent with the MTA, violated his constitutional rights to due process and equal protection when they terminated his employment as a transit operator with the MTA. Now pending before the Court is Defendants' Motion for Summary Judgment, to which Plaintiff, who is represented by counsel, has not filed an opposition. (Dkt. Nos. 47 & 55.) Having carefully considered the filings, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and GRANTS Defendants' motion.[1]

**SUMMARY JUDGMENT EVIDENCE**

Plaintiff, an African-American man, was hired as an MTA transit operator (bus driver) in 2003. (Dkt. No. 48, Robinson Depo. at 69:8-13).) He received two to three months of training from the MTA. (*Id*. at 69:20-24.) As part of his training, he received a copy of the MTA rule

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 5, 24.)

book, which he independently reviewed and which governed the conduct of all MTA operators including Plaintiff. (*Id*. at 69:25-70:10; Dkt. Nos. 49 ¶ 5; 49-2.)

On July 20, 2011, Plaintiff was involved in an incident with a passenger.[2] At approximately 6:52 p.m. a female passenger boarded Plaintiff's bus. At the time she boarded the bus, only one other passenger was on board. The female passenger put some coins in the fare machine and said something inaudible. In response, Plaintiff asked how old she was, she responded that she was 18, but she did not have additional fare. Plaintiff responded that it was her responsibility, and when she asked "so I can't get a transfer," he responded "no." The passenger then called Plaintiff a "douche-bag" and walked midway back into the bus. Plaintiff stopped the bus, stood up and said "what did you call me, excuse me?" The passenger stated that she paid the fare, to which Plaintiff responded "you didn't pay a fare, the fare is two dollars." She responded "I did pay my fare" and Plaintiff stated "okay you get your douche bag ass off my bus." The verbal altercation between the two continued and when the passenger ignored Plaintiff's requests to get off the bus, he stated that he would call the police. In response to his statement that they would "take your douchbag ass to jail," the passenger stated "take my douchebag ass to jail? I could have your ass reported," and Plaintiff countered "I could have your ass deported." The two exchanged more profanities and insults ultimately culminating in the passenger stating "you stupid ass black nigger." Following this, she advanced to the front of the bus and called Plaintiff a "stupid ass bitch" as she exited. Plaintiff then stated "your mama is a bitch" to which the passenger responded "you're a bitch asshole." She then advanced back onto the bus saying "oh throw something at me, go ahead, I will call the fucking cops." Plaintiff called the passenger a "bitch" again and the passenger slapped him. Plaintiff punched her in the face and physically threw her out of the bus. He then closed and locked the bus doors (the other passenger exited via the rear doors when the altercation escalated), and called Central Command to report that "he had just been assaulted." The police and paramedics responded to the scene.

---

[2] Defendants submitted a video of the incident in support of their motion for summary judgment. (Dkt. No. 49-3.) The video contains footage from five different cameras within the bus which simultaneously show the incident and includes audio the quality of which is sufficient to hear the majority of the words exchanged between Plaintiff and the female passenger in question. All descriptions of the incident in this Order are based on the Court's review of this footage.

Following the incident, Wallace Johnson, Assistant Superintendent of the Woods Division of the MTA, himself an African-American man, was assigned to handle Plaintiff's disciplinary proceedings. (Dkt. No. 50 at ¶ 3.) He did so at the request of Defendant Superintendent Cheryl Turner. (*Id.*) Mr. Johnson compiled the on board video footage and following his review of the footage recommended Plaintiff's dismissal. (*Id.*; Dkt. No. 49-4.)

On July 25, 2011, Mr. Johnson mailed Plaintiff a notice of proposed termination and supporting *Skelly* packet pursuant to the Memorandum of Understanding ("MOU") between Plaintiff's Union and the City.[3] (Dkt. Nos. 49-4 ("Proposed Recommended Disciplinary Action—Dismissal"); Dkt No. 49-1 ¶¶ 211-214 (MOU).) The *Skelly* Notice summarized the incident and concluded that Plaintiff's "misconduct and unprofessional, malicious, and criminal [] will not be tolerated or condoned." (Dkt. No. 49-4 at 3.[4]) The Notice advised Plaintiff that he had a right to provide a written or oral response to the recommended action and that a hearing date would be set upon his return to work. (*Id.* at 4.) The enclosed *Skelly* packet included a copy of the San Francisco Municipal Railway Accident/Incident Report which included Plaintiff's written description of the incident stating that "An adult female Hispanic boarded coach as Cesar Chavez and Bryant O.B. She had part of fare. Demanded Transfer. She became Verbally Threatening. The coach was stop and she was ask to leave. With all doors open she came to the front door to leave. She step out and back hitting me with her fist to my face. I defended myself." The report is signed by Plaintiff and dated July 20, 2011 at 10:50 p.m. (approximately four hours after the incident.) (Dkt. Nos. 49 ¶ 7; 49-4 at 7.)

On August 16, 2011, Plaintiff, his Union representative, and Mr. Johnson attended an investigation conference wherein Plaintiff was shown the video from the on-board cameras. (Dkt. No. 49-5.) A week later, a *Skelly* hearing was held; although Mr. Johnson and the union

---

[3] California law provides for a public employee's right to a pre-termination hearing. In *Skelly v. State Pers. Bd.*, 15 Cal.3d 194, 215 (1975), the California Supreme Court held that due process "mandate[s] that the employee be accorded certain procedural rights before" being removed. At a minimum, these pre-removal safeguards must include "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." *Id.*
[4] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

representative attended, Plaintiff did not. (Dkt. No. 49-5 at 4.) The proposed disciplinary action was sustained. (*Id*.)

Plaintiff thereafter appealed his discharge pursuant to the MOU Union grievance procedure, challenging his dismissal for violations of the San Francisco Municipal Rail Rules and Instructions Handbook Rule 2.8.1, Rule 2.8.9, Rule 2.8.11, Rule 2.13.1F, and Rule 2.13.1l.[5] (Dkt. No. 49-6 at 2; *see also* Dkt. No. 49-1 Art. 22 (MOU).) A hearing was scheduled for January 26, 2012; however, Plaintiff did not appear so the hearing was rescheduled for February 1, 2012. (Dkt. No. 49-6.) On February 8, 2012, Step 2 Hearing Officer Chris Iborra issued a decision denying the grievance and upholding the dismissal. (*Id*. at 3.) The decision summarizes the incident, and the Union's position, on Plaintiff's behalf, that he was acting in self-defense. The decision concludes that the

> on-board coach video corroborates the Agency's position. There was no reason to escalate the disagreement. Operators, when faced with similar situations regarding fare disputes, are required to remind the customer of the proper fare and to not argue fare disputes, are required to remind the customer of the proper fare and to not argue further. If the Operator feels it is unsafe to continue, he/she must contact Central Control and ask for assistance. In this case, Grievant could not control himself, impermissibly left the operator seat and got into an unjustified argument that ended up in a physical altercation.

(*Id.* at 3-4.)

Plaintiff appealed his dismissal to an independent arbitrator under the MOU grievance procedures. (Dkt. No. 49-1 at § 271.) The grievance was denied in a March 6, 2012 decision which concluded that the Agency had just cause for discharging Plaintiff. ((Dkt. No. 49-8.) The

---

[5] These rules state in relevant part:
> Rule 2.8.1: Polite, respectful behavior is required of all employees in their dealings with the public, their subordinates and each other;
> Rule 2.8.9: Dishonest employees will not be retained in the service;
> Rule 2.8.11: Quarrelsome employees will not be retained in the service;
> Rule 2.13.1F: Violation of any of the following rules will be sufficient cause for charges for disciplinary action involving suspension or, if appropriate, dismissal: Discourteous treatment of the public or other employees of the SF Muni Railway;
> Rule 2.13.1l: Violation of any of the following rules will be sufficient cause for charges for disciplinary action involving suspension or, if appropriate, dismissal: Dishonesty.

(Dkt. No. 49-2 at 10-12.)

4

decision notes that

> Clearly, the passenger was the protagonist who (1) did not pay the correct fare; (2) called Grievant – who was merely doing his job at that point – a "douche bag" as she walked away from him; (3) subsequently called him the "N" word; and (4) when she returned to the coach, slapped him across the face.
>
> \*\*\*
>
> [However], from the first negative comment by the passenger (i.e., "douche bag"), Grievant got out of the bus seat. With certain exceptions not herein relevant, once an Operator leaves the bus seat, the Operator, and the Agency, are almost always going to be at fault for the consequences.
>
> \*\*\*
>
> The record demonstrates that he crossed the line from self-defense and became a willing participant in the altercation [and] neither his radio call to CC nor his written report accurately reflected what the videotape shows are the true facts.
>
> \*\*\*
>
> Accordingly, notwithstanding the fact that the passenger was the original instigator of the incident, Grievant clearly lost his composure, overreacted and then failed to accurately report the facts.
>
> \*\*\*
>
> The Agency has just cause to discharge Harold Robinson, Grievant.

(*Id*. at 6-8.)

## PROCEDURAL BACKGROUND

Plaintiff filed this civil action on December 17, 2013 alleging two causes of action under 42 U.S.C. § 1983 for violation of his "right to be free from discrimination," "right to due process" and "right to equal protection of the law" under the First, Fourth, and/or Fourteenth Amendments. (Dkt. No. 1.) Plaintiff named the City and County of San Francisco, the San Francisco Municipal Transit Agency, Edward D. Reiskin, the Executive Director of the MTA, and Cheryl Turner, Superintendent of the Woods Division of MTA during the relevant time period. By stipulation of the parties, Plaintiff subsequently dismissed his claims against the San Francisco Municipal Transit Agency. (Dkt. No. 30.)

Defendants filed the underlying Motion for Summary Judgment on July 9, 2015. (Dkt. No. 47.) At Plaintiff's request, the Court granted an extension of time for him to file his opposition brief. (Dkt. No. 54.) Plaintiff did not file his opposition brief on the extended due date or request a further extension of time to do so. Defendants thereafter filed a reply noting that Plaintiff had failed to oppose the pending motion for summary judgment. (Dkt. No. 55.) As of the date of this

Order, Plaintiff has not filed any responsive pleading.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). The Court must draw "all reasonable inferences [and] resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004). A fact is material if it "might affect the outcome of the suit under the governing law," and an issue is genuine if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There can be "no genuine issue as to any material fact" when the moving party shows "a complete failure of proof concerning an essential element of the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

On those claims on which Defendants do not carry the ultimate burden of persuasion, Defendants, as the moving party, have the burden of producing evidence negating an essential element of each claim on which it seeks judgment or showing that Plaintiff cannot produce evidence sufficient to satisfy her burden of proof at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once Defendants meet that burden, Plaintiff, as the non-moving party, must show that a material factual dispute exists. *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). Allegations alone are not sufficient to meet Plaintiff's burden; instead, Plaintiff must submit admissible evidence. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). Plaintiff's evidence must be such that a reasonable trier of fact could return a verdict in Plaintiff's favor, *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995), and the Court "is not required to comb the record to find some reason to deny a motion for summary judgment," *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988).

## DISCUSSION

Plaintiff's precise legal claims are somewhat difficult to discern as the only substantive pleading he has filed is the Complaint. The Complaint alleges that there is a "de facto policy of discrimination against black male employees—bus operators—at SFMTA; and the SFMTA kept a secret list of trouble drivers, and on information belief Plaintiff was on that list." (Complaint ¶ 16.) Plaintiff appears to contend that his equal protection rights were violated as he was

"subjected to unequal treatment in the job place" and his due process rights were violated because the grievance process is "illusory and result-oriented." (Complaint ¶¶ 32-33.)  Defendants' "misconduct" subjected "persons such as Plaintiff to retaliatory actions because they are members of a protected class." (*Id.* at ¶ 19.)

The Court concludes that even if these claims stated a colorable claim for violation of Plaintiff's constitutional rights, they still fail as Plaintiff has not submitted any evidence that supports a finding in his favor.

### A. Plaintiff's Due Process Claim

The requirements of procedural due process apply "when a constitutionally protected liberty or property interest is at stake." *Matthews v. Harney Cnty., Or., Sch. Dist. No. 4*, 819 F.2d 889, 891 (9th Cir. 1987) (internal citation omitted).  A section 1983 procedural due process claim has three elements: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

Defendants do not, and cannot, dispute that Plaintiff has a protected property interest in his employment with the City. *See Weisbuch v. County of Los Angeles*, 119 F.3d 778, 780 (9th Cir. 1997).  Nor is there any dispute that Plaintiff's employment was terminated.  Thus, the question is whether Plaintiff was afforded adequate procedural protections prior to termination.  In this regard, Plaintiff alleges that that his termination was "predictable" "as the grievance process th[r]ough[] the SFMTA is illusory and result-orientated, with most if not all outcomes, on information and belief, pre-determined." (Complaint ¶ 32.)

"When a public employee is terminated for cause, he is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Hufford v. McEnaney*, 249 F.3d 1142, 1151 (9th Cir. 2001) (internal citation and quotation marks omitted).  "While the pre-termination hearing need not be elaborate, the root of this requirement is that an individual have the opportunity to be heard before he is deprived of his property interest." *Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 968 (9th Cir. 2011).  "A public employer may meet its obligation to provide due process through grievance

procedures established in a collective bargaining agreement, provided, of course, those procedures satisfy due process." *Armstrong v. Meyers*, 964 F.2d 948, 950 (9th Cir. 1992)

Defendants contend that Plaintiff received all the procedural protections to which he was entitled in compliance with the MOU Plaintiff's Union had with the MTA. In particular, Plaintiff received a *Skelly* notice advising him of the charges against him including the rules he was alleged to have broken which allowed him to respond orally or in writing. (Dkt. No. 49-4.) He thereafter attended an investigatory conference with his Union representative at which he was shown the video-recording of the incident and given an opportunity to respond. (Dkt. No. 59- at 3.) A *Skelly* hearing was subsequently held and Plaintiff's Union representative appeared on his behalf. (*Id*. at 4.) Plaintiff then appealed the termination recommendation and had a Step 2 Hearing in accordance with the MOU. (Dkt. No. 49-6.) It was only after this hearing, at which Plaintiff and his Union representative were present, that Plaintiff was terminated effective February 13, 2012. (Dkt. No. 49-7.) Plaintiff thereafter filed a further appeal under the MOU challenging his dismissal before an impartial Step 3 hearing officer/arbitrator. (Dkt. No. 49-8.)

Plaintiff thus had three opportunities to be heard prior to termination as well as a post-deprivation hearing. This process provided a more than adequate opportunity for him to be meaningfully heard prior to termination. *See Lopez v. City & Cnty. of San Francisco*, No. 12-06523, 2014 WL 2943417, at *9 (N.D. Cal. June 30, 2014) (concluding that the same process as challenged here "provided Lopez with more than an adequate opportunity to be heard at a meaningful time and in a meaningful manner"); *Flugence v. City & Cnty. of San Francisco*, No. 12-00437, 2013 WL 6235372, at *8 (N.D. Cal. Dec. 2, 2013) (considering a nearly identical procedural due process challenge and concluding that "Defendants provided Plaintiff full notice and the grounds for his proposed termination, then three opportunities to be heard before finally terminating him according to the terms of the MOU"); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1984) (a due process termination hearing need only provide the employee "notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story").

The Court is cognizant that an employee's "interest in keeping his job is substantial,"

1  *Armstrong*, 964 F.2d at 950, as the "the significance of the private interest in retaining
2  employment cannot be gainsaid." *Loudermill*, 470 U.S. at 543.  Plaintiff, however, has provided
3  no evidence to support his allegation that the procedures followed here— pursuant to the MOU—
4  deprived Plaintiff of this interest.   Plaintiff has offered no evidence in support of his allegation
5  that the process is illusory, or that he was targeted based on his race and/or inclusion on a watch
6  list.  Beyond Plaintiff's bare allegation in the complaint that the grievance process is "illusory and
7  result-oriented," Plaintiff has not offered anything which raises a question of material fact with
8  respect to his due process rights.

9  Defendants' motion for summary judgment on the procedural due process claim is
10 therefore granted.

### B. Plaintiff's Equal Protection Claim

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  Plaintiff can do so by demonstrating: "(1) that the plaintiff was treated differently from others similarly situated; (2) this unequal treatment was based on an impermissible classification; (3) that the defendant acted with discriminatory intent in applying this classification; and (4) the plaintiff suffered injury as a result of the discriminatory classification." *Lam v. City & Cnty. of San Francisco*, 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012).  "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis in original).

Although it is undisputed that Plaintiff, as an African-American, is a member of a protected class, there is no evidence before the Court raising a triable issue of fact as to whether Defendants intentionally discriminated against him at any point during the grievance process or terminated his employment because of his race.  Defendants have offered uncontested evidence documenting the investigation, grievance, and disciplinary process which consistently shows that Plaintiff was terminated because of his conduct on July 20, 2011. (Dkt. Nos. 49-4—49-8.)

Plaintiff's unsupported allegation that there is "de facto policy of discrimination against black male employees—bus operators—at SFMTA" is insufficient at the summary judgment stage. (Complaint ¶ 16.) *See Anderson*, 477 U.S. at 250 (the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion"); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The gist of a summary judgment motion is to require the adverse party to show that it has a claim or defense, and has evidence sufficient to allow a jury to find in its favor on that claim or defense."). Plaintiff has failed to offer any evidence that creates a triable issue of fact as to his conclusory allegation of a de facto policy of discrimination.

Accordingly, summary judgment is granted with respect to Plaintiff's equal protection claim.

Having concluded that Plaintiff's substantive legal claims fail, the Court need not reach Defendants' alternative argument that Plaintiff cannot state a claim under Section 1983 against either the City and County of San Francisco or the individual defendants.

## CONCLUSION

The female passenger's conduct on July 20, 2011 was outrageous and reprehensible. But two wrongs do not make a right, even if one of the wrongs occurred first. As the record is devoid of any evidence upon which a trier of fact could find a violation of Plaintiff's due process or equal protection rights, Defendants' Motion for Summary Judgment is GRANTED.

This Order disposes of Docket No. 47.

**IT IS SO ORDERED.**

Dated: August 14, 2015

JACQUELINE SCOTT CORLEY
United States Magistrate Judge